**In re Edward Lee SIMMONS, Sr., Debtor.**

**Donald D. SIMMONS, Movant,**

v.

**Edward L. SIMMONS, Sr., Respondent.**

**Bankruptcy No. 92–50656.**

United States Bankruptcy Court, W.D. Missouri.

Jan. 14, 1993.

Bradley Constance, Constance, Cook & Stewart, Independence, MO, for movant.

Edward Lee Simmons, Sr., pro se.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

This matter comes before the Court on Plaintiff's Motion to Dismiss and to Enjoin Debtor from Filing Additional Bankruptcy Cases or in the Alternative, to Lift Automatic Stay. This is a core proceeding under 28 U.S.C. §§ 157(b)(2) and 157(b)(2)(G) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below and in accordance with the Court's decision, announced from the bench at a hearing on this matter on January 8, 1993, an Order will be entered dismissing this Chapter 13 bankruptcy as a bad faith filing. Such Order will also enjoin the debtor from filing a bankruptcy petition under Chapters 11, 12, or 13 for 180 days, and will direct the Clerk of the Bankruptcy Court in the Western District of Missouri not to accept any filing which violates the terms of such injunction. To the extent of any inconsistency between this opinion or the Order to be entered this date and the oral findings announced on January 8, 1993, the Order and opinion control.

## FACTUAL BACKGROUND

Debtor executed two promissory notes secured by two different mortgages on real estate located at Lot 285, WALNUT GARDENS, Lots 259 through 316, a subdivision in Independence, Jackson County, Missouri (the "Property"). The holder of both notes was debtor's aunt, Anna L. Larsen, who died on August 13, 1991. The first note and mortgage were executed on September 27, 1972, for the sum of $30,000 at 7½% per annum (Note # 1). The second note and mortgage were executed on January 27, 1984, for the sum of $10,815 at eight percent per annum (Note # 2). According to movant, debtor defaulted on Note # 1 on December 1, 1983, and has made no payments on Note # 2. As of December 1, 1992, principal and interest due on Note # 1 totals $38,845.76, and principal and interest due on Note # 2 totals $17,592.40. In addition, the expenses incurred in attempting to enforce the deeds of trust total $3,594.38. According to debtor, he should be given credit for a payment of $3,083, representing monies allegedly paid by debtor to a trust fund established by Anna Larsen to educate debtor's son. Debtor also contends, among other things, that the obligation to the Larsen estate was satisfied by services he performed, and that the claim against him is barred by the statute

of limitations. Principal and interest on both notes, as well as the expenses incurred in attempting to enforce the deeds of trust, are listed as assets of the estate of Anna L. Larsen.

In January, 1991, Anna L. Larsen began foreclosure proceedings against the Property secured by Note # 2. A foreclosure sale was scheduled for 2:00 P.M. on February 21, 1991. At 4:15 P.M., on February 20, 1991, debtor filed a Chapter 12 bankruptcy petition (Case No. 91–50079) with this Court. The Court dismissed that case on May 22, 1991, because debtor failed to qualify for protection under Chapter 12. Debtor testified at the hearing on the trustee's motion to dismiss that he filed the bankruptcy solely to stop the foreclosure proceeding. Debtor contended that Ms. Larsen had no right to foreclose on his property as he had satisfied the debt through his labor. The Court advised the debtor at that time that this was an issue properly addressed in state court.

In May, 1991, Ms. Larsen again began foreclosure proceedings against the Property secured by Note # 2. A foreclosure sale was scheduled for 2:00 P.M. on June 19, 1991. At 2:30 P.M., on June 18, 1991, debtor filed a Chapter 13 bankruptcy petition (Case No. 91–50313) with this Court. A confirmation hearing was held on October 4, 1991, at which time the Court denied confirmation because the plan was not proposed in good faith. During the course of this second proceeding, Ms. Larsen died on August 13, 1991, and movant, Donald Simmons, was appointed a personal representative of her estate on October 7, 1991. On October 8, 1991, debtor dismissed his Chapter 13 case. In conjunction with such dismissal, movant agreed to allow debtor six months in which to satisfy Notes # 1 and # 2 prior to beginning foreclosure proceedings once again.

Debtor failed to make any payments to the Larsen estate during this six month period. Therefore, foreclosure proceedings were instituted in August, 1992, and a sale was scheduled for 2:00 P.M., September 9, 1992. Debtor first attempted to obtain a temporary restraining order from the Circuit Court of Jackson County, Missouri, and, when that attempt was unsuccessful, at 1:15 P.M., on September 9, 1992, debtor filed another Chapter 13 bankruptcy petition (Case No. 92–50494). On October 22, 1992, the Court issued an Order to Show Cause Why Debtor's Case Should Not Be Dismissed for Failure to File Schedules, Statements and Plan. No response was filed to such order to show cause. Therefore, on October 23, 1992, the Court dismissed debtor's third bankruptcy petition.

In November, 1992, movant again began foreclosure proceedings against the Property secured by Note # 2 and a sale was scheduled for December 7, 1992. Debtor tried and, once again, failed to obtain a temporary restraining order from the Circuit Court of Jackson County, Missouri, and then filed this fourth bankruptcy petition on December 7, 1992.[1] Thereafter, movant filed a motion to dismiss and to enjoin debtor from filing additional cases, or in the alternative to lift the automatic stay.

All four bankruptcy petitions have been "quick filed", thus without the preparation of statements and schedules at the time of filing.

## DISCUSSION

### A. Dismissal

Good faith is not defined in the Bankruptcy Code ("Code"). However, section 1307(c) provides as follows:

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under Chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *for cause*, ...

11 U.S.C. § 1307(c) (emphasis added). Lack of good faith in filing a bankruptcy constitutes cause under section 1307(c) to dismiss such case. *In re Belden*, 144 B.R.

---

1. Exhibit A to the debtor's petition in this case seems to indicate that the state court required the debtor to post a $40,000 bond, which he was unable to do.

1010, 1019, n. 14 (Bankr.D.Minn.1992) (*citing Guadet v. Kirshenbaum, Inv. Co. (In re Gaudet*), 132 B.R. 670 (Bankr.D.R.I. 1991)); *See also In re Novak*, 121 B.R. 18 (Bankr.W.D.Mo.1990); *In re Samuel*, 77 B.R. 520 (Bankr.E.D.Pa.1987). The Eighth Circuit has stated that a good faith inquiry depends upon three factors: "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." *In re LeMaire*, 898 F.2d 1346, 1349 (8th Cir.1990) (en banc) (*quoting In re Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir.1987)).

■ I note here that the debtor has filed all of his bankruptcies *pro se. Pro se* filings are held to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). In order to assure that bankruptcy relief remains available to *pro se* debtors, the court holds their petitions and schedules to less stringent standards. *See, e.g., Hilgeford v. Peoples Bank, Inc.*, 652 F.Supp. 230, 232 (N.D.Ind.1986), *aff'd Hilgeford v. Peoples Bank*, 776 F.2d 176 (7th Cir.1985), *cert. denied, Hilgeford v. Peoples Bank, Portland*, 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 188 (1986). Given that tolerance, debtor's schedules in this case are contradictory at best. He lists in his Summary of Schedules that he has total assets of $225,-650 and total liabilities of $39,022. He further states his income as $3490 per month on Schedule I and his expenses as $145 on Schedule J. During the hearing, he stated his income was $1143 per month from rent and social security. In addition, he testified he makes approximately $6000–7000 a year from farming and approximately $6000 a year from selling insurance. On Exhibit A, which was attached to his Chapter 13 petition, he lists his total assets as $191,000 and total liabilities as $14,592. On the plan that debtor introduced during the hearing he lists his income as $1143 from "rent and fica plus farming." He makes no mention of the income from selling insurance. He also proposes in the plan to pay $207 per month to GMAC on a $2900 lien secured by a truck and $140 per month for twenty-four months to the Jackson County collector for past due property taxes on the Property. He makes no mention of these expenses on his Schedule J. Thus, it appears that debtor has not accurately listed his income, debts, or expenses in all cases. Given that he is acting *pro se*, however, I would not dismiss the case based on that factor alone.

■ I do, however, find that debtor has most egregiously manipulated the bankruptcy code, and that that alone constitutes cause for dismissal. By his own testimony and petition[2] debtor has freely admitted that he has filed these bankruptcies to interfere with a foreclosure process instigated in the Circuit Court of Jackson County, Missouri. When a previous bankruptcy of the debtor was dismissed, this Court advised debtor that his dispute with the executor of Ms. Larsen's estate is one which should be resolved in state court. Despite testimony from debtor that he has instituted proceedings in the Circuit Court of Jackson County, Missouri to resolve this dispute, on three separate occasions, since that advice, debtor has filed a Chapter 13 bankruptcy on the eve of a foreclosure. In the bankruptcy filed on June 18, 1991, the case was voluntarily dismissed after debtor and the personal representative of Anna Larsen's estate reached an out of court settlement. In the bankruptcy filed on September 9, 1992, the Court dismissed the case for failure to file schedules, statements, and a plan. Debtor never appealed these orders of dismissal, and, at no time has debtor claimed a change of circumstances to necessitate the subsequent filings. *See In re Dyke*, 58 B.R. 714, 717 (Bankr.N.D.Ill.1986). On two separate occasions debtor has attempted unsuccessfully to obtain a temporary restraining order in state court just prior to his bankruptcy

---

**2.** As a comment to Exhibit "A" filed with his petition, debtor states, "The sole need to file is that I am a ⅓ heir in the estate of Anna L. Larsen (mortgee [sic] of my real estate) In [sic] the estimated ammount [sic] of $52,000 but the executor keeps trying to foreclose instead of setting off my debts. Also the $38,845.76 has been paid by services and is also barred by the statute of limitations and is being litigated in state court; pluss [sic] $40,00 [sic] bonds etc."

filings. Debtor has filed four separate bankruptcy petitions, each one on the eve of a foreclosure sale. *See, In re Novak*, 121 B.R. 18, 20 (Bankr.W.D.Mo.1990) (where debtor filed one Chapter 13 in 1987, never filed a confirmable plan, voluntarily dismissed the proceeding after two years, waited one year, and then filed another Chapter 13, Chief Judge Frank Koger found lack of good faith justifying dismissal); *In re Dyke*, 58 B.R. at 718 (where debtors sought dismissal of one Chapter 13 with the intent to immediately file another in order to invoke the automatic stay, the court dismissed the first case and enjoined debtors from filing a subsequent case for 180 days). I, therefore, find that debtor has unfairly manipulated the Code. As such, this petition was filed in bad faith and should be dismissed.

### B. Injunction as to Future Filings

■ Movant also asks that debtor be prohibited from filing another bankruptcy case before December 7, 1993. Courts are extremely reluctant to restrict the rights of plaintiffs to seek relief from the judicial system. However, there are circumstances where such action is necessary. In *In re Tyler*, 839 F.2d 1290 (8th Cir.1988), the Eighth Circuit limited a *pro se* inmate to one filing a month in district court, as well as proscribing certain conditions precedent to the filing of future lawsuits. *Id.* 1295. The court took such action because "Mr. Tyler has flagrantly and repeatedly abused judicial process by filing a multitude of meritless lawsuits." *Id.* *See also Hilgeford v. Peoples Bank, Inc.*, 652 F.Supp. at 234 (court enjoined plaintiff from filing any actions against defendant and from filing any action or proceeding in any federal court without first obtaining leave of that court). Bankruptcy courts similarly have the authority to issue injunctions to prevent the filing of groundless, vexatious, repetitive, or harassing claims, based on both the inherent authority of federal courts and the specific terms of the Bankruptcy Code. 11 U.S.C. § 109(g); *In re Belden*, 144 B.R. 1010 (Bankr.D.Minn. 1992).

Under the circumstances here, injunctive relief is necessary. After four separate filings, and after this Court's determination that this two-party dispute should be resolved in state court, steps must be taken to insure that the state court process is allowed to run its course. Without appealing any prior dismissals, debtor has continued to thwart foreclosure sales by filing bankruptcy petitions just in time to impose an automatic stay which the creditor could not realistically get lifted prior to the sale. As stated previously, debtor can move the state court to enjoin a sale because of the contentions made by him. Or, debtor can exercise any rights available to him to seek damages from the Larsen estate after a sale takes place. In any event, this dispute between debtor and one creditor should not be used in invoke the jurisdiction of this court. Given debtor's past conduct, an injunction against continued bankruptcy filings is necessary.

However, in light of courts' reluctance to limit access by litigants, the scope of such injunction must be carefully circumscribed, so that only the minimal interference necessary is imposed on debtor. Here the injunction is necessary to allow the foreclosure sale to proceed, unless that sale is halted pursuant to state law. Debtor can frustrate that process, as he has in the past, by filing a Chapter 13 petition, which stays the foreclosure until the sale date is passed. He then can either exercise his right to dismiss the case (11 U.S.C. § 1307(b)), or allow the court to dismiss it. In this way the matter shuttles back and forth between the bankruptcy and state courts without being concluded.

Unless stayed by the state court, movant should be able to conclude the foreclosure process within 180 days. Therefore, the injunction against filing new cases will be limited to that period. Furthermore, such injunction does not extend to Chapter 7.[3] Based on the pleadings filed by debtor, he has sufficient income to pay his monthly living expenses, as well as to make payments on his obligations to GMAC and the Jackson County collector. If, in fact, the

---

**3.** It should be noted that Chapter 7 cases cannot

be dismissed by a debtor without court approv-

debtor's circumstances change, and he needs relief in the bankruptcy court, for something other than to halt a foreclosure by the Larsen estate, debtor still has Chapter 7 available to him.

■ I choose to dismiss this case under the authority granted to me by section 1307(c) of the Code. I could, however, have granted the movant's alternative motion to grant relief from the automatic stay. The Code provides in section 362(d)(1) that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1). As discussed *supra* courts have consistently held that a lack of good faith constitutes "cause" in bankruptcy under section 1307(c). Likewise, a lack of good faith constitutes "cause" under section 362(d)(1) for lifting the automatic stay. *See, e.g., In re Little Creek Development Co.,* 779 F.2d 1068, 1072 (5th Cir. 1986); *In re Choctaw Boundary Farms, Inc.,* 72 B.R. 638, 642 (Bankr.S.D.Miss. 1987). The court in *Little Creek* set forth a list of factors to be considered in determining whether a debtor's filing for relief was in good faith: (1) the debtor has one asset; (2) secured creditors' liens encumber this asset; (3) there are no employees except for the principals; (4) there is little or no cash flow; (5) there are no available sources of income to sustain a plan of reorganization or to make adequate protection payments; (6) there are only a few, if any, unsecured creditors; (7) the property has been posted for foreclosure; (8) the debtor has been unsuccessful in defending actions against the foreclosure in state court; (9) the debtor and one creditor have proceeded to a stand-still in state court litigation, and debtor has lost or has been required to post a bond which it cannot afford. *Little Creek,* at 1073. Certainly, a majority of these factors apply to debtor in this case. Were I to grant movants motion to lift the automatic stay, movant could recommence foreclosure proceedings. If debtor then exercised his right to dismiss the Chapter 13 case, he would by statute be prohibited from filing another bankruptcy for 180 days. 11 U.S.C. § 109(g).[4] In view of the dismissal, however, it is not necessary to rule on the motion for relief from the stay. I simply note that the injunction against bankruptcy filings imposed on debtor is no more restrictive than that which would be imposed by this alternative scenario.

An Order consistent with this opinion will be entered this date.

---

al. Compare 11 U.S.C. § 1307 with 11 U.S.C. § 707.

4. Section 109(g) provides:

(g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case, or

(2) debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.
11 U.S.C. § 109(g).